NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUN 16 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ANTELIA FIGUEROA BARRERA; KEVIN NIETO FIGUEROA, <br><br> Petitioners, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No. 21-70988 <br><br> Agency Nos. A206-911-229 <br> A206-911-230 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 6, 2022**
Seattle, Washington

Before: GILMAN,*** IKUTA, and MILLER, Circuit Judges.

Petitioners Antelia Figueroa Barrera and her son, Kevin Nieto Figueroa,

seek review of an order of the Board of Immigration Appeals affirming the denial

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\*      The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

of their applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). In September 2012, Esteban Nieto Flores—Figueroa Barrera's husband and Kevin's father—was killed in Guerrero, Mexico. Petitioners believe that Nieto Flores was killed by a drug cartel known as the "Caballeros Templarios." Petitioners assert that if returned to Mexico, they would be persecuted because they belong to the particular social group of "Immediate Family Members of Esteban Nieto Flores."

The Board held that petitioners' asylum and withholding-of-removal claims failed for lack of a nexus to a particular social group, and that their CAT claims failed because they did not show that it is more likely than not that they would be tortured if returned to Mexico. We review the agency's factual determinations for substantial evidence, and review de novo whether the agency applied the correct legal standard. *Garcia v. Wilkinson*, 988 F.3d 1136, 1142, 1146 (9th Cir. 2021). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition for review.

1.     An applicant for asylum or withholding of removal must demonstrate a nexus between the persecution she suffered or fears and a protected ground. *Barajas-Romero v. Lynch*, 846 F.3d 351, 356–58 (9th Cir. 2017); *Garcia*, 988 F.3d at 1143. For purposes of asylum, an applicant must show that the protected ground is "one central reason" for her persecution. *Barajas-Romero*, 846 F.3d at 358; 8 U.S.C. § 1158(b)(1)(B)(i). The nexus standard in the context of withholding of

2

removal is "less demanding," requiring the applicant to show only that the protected ground is "a reason" for her persecution. *Barajas-Romero*, 846 F.3d at 360; 8 U.S.C. § 1231(b)(3)(C).

Substantial evidence supports the Board's conclusion that there was no nexus between petitioners' proposed particular social group and the harm they suffered or fear. Petitioners received a series of anonymous phone calls and text messages that they interpreted as threatening. Figueroa Barrera also received a text message from the Caballeros Templarios demanding 50,000 pesos and threatening to kidnap Kevin if she did not comply. But the record does not compel the conclusion that petitioners received these threats because they were immediate family members of Nieto Flores. The threats that Figueroa Barrera received did not mention Nieto Flores. Nor is there evidence that the anonymous caller's attempted meeting with Kevin was motivated by his familial relationship with Nieto Flores. Though petitioners might have been contacted by members of the Caballeros Templarios, an applicant's "desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground." *Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010).

Petitioners also received threats from their relative, Celica Quintana. The Board reasonably concluded that Figueroa Barrera's disagreement with Quintana over the ownership of Nieto Flores's Cadillac Escalade was a "personal dispute"

3

unrelated to Figueroa Barrera's relationship with Nieto Flores. *See Madrigal v. Holder*, 716 F.3d 499, 506 (9th Cir. 2013) (noting that "mistreatment motivated purely by personal retribution will not give rise to a valid asylum claim"). The Board also reasonably concluded that Quintana did not attempt to recruit Kevin into her cartel because of "his family relationship with [Nieto Flores]," but rather because of a desire "to increase the numbers and strength of her criminal organization." *See Zetino*, 622 F.3d at 1016. Substantial evidence supports the Board's conclusion that no nexus existed between the threats from Quintana and petitioners' particular social group.

2. Petitioners challenge the legal standard that the Board used to assess the nexus for their withholding-of-removal claim. In its decision, the Board did not distinguish between the nexus standard used for asylum ("one central reason") and the less demanding standard used for withholding of removal ("a reason"). But the Board found that petitioners "did not demonstrate a nexus between the threats they received and the proposed particular social group," explaining that it "agree[d] with the . . . determination" of the immigration judge, who had concluded that there was "no connection between the murder of [Nieto Flores] in September of 2012 and any claimed persecution relating to the [petitioners]." Because the Board's decision is best read as finding that there was "*no* nexus between the harm to [petitioners] and the alleged protected ground," we conclude that "neither the

4

result nor the [Board's] basic reasoning would change," even under the correct standard for withholding of removal, and therefore we need not remand to allow the Board to apply that standard independently. *Singh v. Barr*, 935 F.3d 822, 827 (9th Cir. 2019) (per curiam).

3.     Substantial evidence supports the Board's denial of petitioners' CAT claims. Petitioners were not tortured in the past, and the record provides no reason to believe that they would be tortured by or with the acquiescence of the Mexican government in the future.

**PETITION DENIED.**